UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA DE JESUS ESTRADA JUAREZ,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM, et al.,<br><br>Respondents. | No. 2:26-cv-00801-DC-CKD (HC)<br><br>ORDER GRANTING PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER<br><br>(Doc. No. 2) |

This matter is before the court on Petitioner Maria de Jesus Estrada Juarez's motion for a temporary restraining order (Doc. No. 2), filed in conjunction with her petition for writ of mandamus and complaint for declaratory and injunctive relief (Doc. No. 1) brought under 28 U.S.C. §§ 2241, 1331, 2201–02, 1361; 8 U.S.C. § 1252(e)(b); and 5 U.S.C. § 704. By her petition and motion for a temporary restraining order, Petitioner challenges her February 19, 2026, removal to Mexico and seeks an order requiring her immediate return to the United States with the same Deferred Action for Childhood Arrivals ("DACA") program protections provided to her before her removal. (Doc. Nos. 1, 2.) Because Petitioner was removed in flagrant violation of the regulatory protections afforded to her under DACA, and in violation of the Constitutional protections afforded to her under the Due Process Clause of the Fifth Amendment to the U.S. Constitution, the court will grant Petitioner's motion for a temporary restraining order and order that Respondents facilitate her immediate return to the United States.

1

## BACKGROUND

**A.    Factual Background**

Petitioner Maria de Jesus Estrada Juarez is a native and citizen of Mexico who has resided in the United States for over 27 years. (Doc. No. 1 at ¶ 15.) Petitioner resides in Sacramento, California with her 22-year-old U.S. citizen daughter. (*Id.* at ¶ 16.)

Petitioner first entered the United States without inspection in December 1998, when she was 15 years old. (Doc. Nos. 1 at ¶ 17; 2-1 at 16.) According to the U.S. Department of Homeland Security ("DHS"), Petitioner was issued an order of expedited removal upon her initial entry and was removed to Mexico.[1] (Doc. Nos. 1 at ¶ 17; 12-1 at 14.) Petitioner returned to the United States two weeks later without inspection and has resided continuously in the United States since that date, except for a trip to Mexico in December 2014, for which Petitioner obtained DHS's authorization pursuant to an authorization for advance parole. (Doc. Nos. 1 at ¶¶ 19, 21, 22; 2-1 at 19–21.)

Petitioner has had DACA status since 2013, under which she is permitted to reside and work in the United States with protection from removal. (Doc. Nos. 1 at ¶ 3; 2-1 at 5–6.) Indeed, Petitioner's DACA approval notice explicitly states that the approval constitutes "an exercise of prosecutorial discretion by USCIS [("U.S. Citizenship and Immigration Services")] not to pursue [her] removal . . . from the United States for" the duration of her DACA status. (Doc. No. 2-1 at 5.) Petitioner's DACA status is currently valid until April 23, 2026. (Doc. Nos. 1 at ¶ 23; 2-1 at 5.) Her application for renewal of her DACA status is pending. (Doc. No. 1 at ¶ 23.)

On February 18, 2026, Petitioner appeared before USCIS for a hearing on her pending application for adjustment of status. (Doc. Nos. 1 at ¶ 25; 2-1 at 15–17.) At that hearing, USCIS denied Petitioner's application for adjustment of status based on the prior expedited removal order and detained Petitioner. (*Id.*) Petitioner alleges that this was the first time she was made aware that she was subject to an order of removal. (Doc. No. 1 at ¶ 26.) She was not provided a

---

[1] Petitioner challenges the validity of this order of expedited removal but concedes that this challenge is properly before the Ninth Circuit Court of Appeals, not this court. (Doc. No. 13 at 2–3 n.1.)

2

copy of the final order of removal. (*Id.*)

Petitioner was removed to Mexico the following morning, February 19, 2026. (*Id.* at ¶ 27.) Petitioner alleges that she never appeared in removal proceedings before an immigration judge. (*Id.* at ¶ 29.) Petitioner has remained in Mexico since her removal. (*Id.* at ¶ 30.)

**B.    Procedural Background**

On March 10, 2026, Petitioner filed her habeas petition asserting the following claims against Respondents Kristi Noem, Todd Lyons, Pam Bondi, and Sergio Albarran: (1) unlawful removal in violation of Petitioner's right to due process pursuant to her DACA status; (2) unlawful removal without statutory authority; (3) unlawful removal without notice; (4) mandamus; and (5) violation of the Administrative Procedure Act due to her removal without legal process. (Doc. No. 1 at 5–9.) In her petition, Petitioner seeks an order declaring Petitioner's February 19, 2026 removal unlawful, requiring Respondents to facilitate her return to the United States, and requiring that Petitioner's DACA protections be restored to her upon her return. (*Id.* at 9–10.) On that same day, Petitioner filed the pending motion for a temporary restraining order arguing that her removal while she had DACA status violated her right to due process, that she was removed from the United States without any statutory authority, and that Respondents are required to return her to the United States. (Doc. No. 2 at 10–15.) Petitioner seeks the same relief in her motion for a temporary restraining order as in her petition. (*Id.* at 17.)

On March 16, 2026, Respondents timely filed their opposition, primarily arguing that this court lacks jurisdiction to consider Petitioner's petition or to order that the government effectuate her return to the United States. (Doc. No. 12.) On March 17, 2026, Petitioner filed her reply thereto. (Doc. No. 13.)

## LEGAL STANDARD

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To

3

obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. 7, 20 (2008). The likelihood of success on the merits is the most important *Winter* factor. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

A party seeking injunctive relief must make a showing on all four prongs of the *Winter* factors to obtain injunctive relief. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *see Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) ("A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'") (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits submitted in support of and in opposition to the [motion for injunctive relief]." *Cal. Rifle & Pistol Ass'n, Inc. v. L.A. Cnty. Sheriff's Dep't*, 745 F. Supp. 3d 1037, 1048 (C.D. Cal. 2024); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1185 (C.D. Cal. 2015).

**DISCUSSION**

**A.      Likelihood of Success on the Merits**

In her motion for a temporary restraining order, Petitioner argues that her "DACA status prevented Petitioner's removal/expulsion from the United States," that she "had a property interest in maintaining her DACA status in the United States," and that her "removal deprives her of that benefit, depriving her of due process." (Doc. No. 1 at 10–11.) Additionally, Petitioner contends that because she was not provided with a final order of removal, her right to due process was violated due to both her lack of notice as to the basis for removal, and to the lack of statutory authority authorizing such a removal. (*Id.* at 12–14.) Petitioner argues that the proper remedy for these violations is an order directing Respondents to return her to the United States. (*Id.* at 14–15.)

In their opposition, Respondents primarily contend that Petitioner is unlikely to succeed on the merits of her claim because the court's ability to review Petitioner's removal from the United States is precluded under 8 U.S.C. § 1252(g), and because the court lacks habeas jurisdiction over Petitioner because her petition was filed after her removal. (Doc. No. 3 at 3–6.) Because Petitioner's entire claim would be subject to dismissal if the court lacks jurisdiction to consider it, the court will address these jurisdictional issues before addressing the merits of Petitioner's claims.

    1.    <u>Jurisdiction</u>

        a.    *8 U.S.C. § 1252*

Respondents contend that 8 U.S.C. § 1252(g) deprives the court of jurisdiction to consider Petitioner's habeas petition. (Doc. No. 12 at 3.) Section 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General[2] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

Respondents argue that because "Petitioner challenges [Immigration and Customs Enforcement's ("ICE")] decision to execute her removal order despite USCIS's contrary decision to not prioritize her removal," and because "these are both discretionary decisions that fall outside of the Court's jurisdiction, Petitioner is unlikely to succeed on the merits of her claim that this Court has subject matter jurisdiction to review this decision."[3] (Doc. No. 12 at 4.) Respondents' argument is unavailing. Importantly, the Ninth Circuit has instructed that § 1252(g) must be read "narrowly" and has interpreted that section as applying only to "actions challenging the Attorney

---

[2] In 2002, Congress transferred the Attorney General's immigration enforcement responsibilities to the Secretary of DHS. *Arce v. United States*, 899 F.3d 796, 799 n.4 (9th Cir. 2018).

[3] Respondents do not clarify what "USCIS's contrary decision to not prioritize [Petitioner's] removal" refers to, but the court interprets this statement as a reference to USCIS's decision to approve Petitioner's DACA status.

General's discretionary decisions to initiate proceedings, adjudicate cases, and execute removal orders." *Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018). Thus, where DHS "totally lacks the discretion to effectuate a removal order, § 1252(g) is simply not implicated." *Arce*, 899 F.3d 796 at 801; *see also Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) ("We have jurisdiction to decide a 'purely legal question' that 'does not challenge the Attorney General's discretionary authority . . . even if the answer to that legal question . . . forms the backdrop against which the Attorney General later will exercise discretionary authority.'") (quoting *United States v. Hovespian*, 359 F.3d 1144, 1155 (9th Cir. 2004)).

Here, Petitioner does not challenge Respondents' discretionary decision to adjudicate or effectuate her removal; Petitioner challenges Respondents' legal authority to effectuate that removal while her DACA status is active. (Doc. No. 2 at 10–13.) Although Respondents minimize Petitioner's DACA status as "USCIS's [discretionary] decision to not prioritize [Petitioner's] removal" (Doc. No. 12 at 4), the Supreme Court has rejected this argument in finding that DACA does not constitute "a passive non-enforcement policy; it create[s] a program for conferring affirmative relief." *Dept. of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 18 (2020). Respondents additionally argue that, because Petitioner was removed pursuant to a reinstated expedited removal order under 8 U.S.C. § 1225(b)(1), this court is precluded by § 1252(e) from reviewing Petitioner's claim. That section allows for habeas proceedings challenging expedited removal orders but limits the reviewing court's jurisdiction to determinations regarding whether the petitioner is a noncitizen, whether the petitioner was ordered removed under § 1225(b)(1), and whether the petitioner is otherwise entitled to statutory withholding of removal. 8 U.S.C. § 1252(e)(2)(A)–(C). But Petitioner does not challenge the validity of DHS's determination regarding her expedited removal order in this court; she challenges DHS's authority to execute her removal altogether. Thus, § 1252(e), as with § 1252(g), does not apply here.

Because Petitioner does not challenge Respondents' discretionary determination to execute a removal order but instead challenges whether Respondents had the lawful authority to exercise that discretion, Petitioner has demonstrated a likelihood of success on the merits of her

6

claim that § 1252(g) does not divest the court of jurisdiction to hear her habeas petition.[4]

b.    *Habeas Jurisdiction After Removal*

Respondents contend that this court does not have jurisdiction over Petitioner's habeas claim because noncitizens "who have already been removed . . . do not satisfy the 'in custody' requirement of habeas corpus jurisdiction." (Doc. No. 12 at 4) (quoting *Miranda v. Reno*, 238 F.3d 1156, 1159 (9th Cir. 2001)). Thus, a noncitizen who has been removed to another country is generally not detained for the purposes of habeas jurisdiction. (*Id.*) (citing *K.H.M.C. v. Barr*, 437 F. Supp. 3d 786, 791 (S.D. Cal. 2020)).

As Respondents concede, the Ninth Circuit has recognized a rare exception to this principle, applicable in extreme circumstances, where courts may exercise jurisdiction over a noncitizen unlawfully removed to a foreign country. (Doc. No. 12 at 4.) For instance, in *Singh v. Waters*, 87 F.3d 346 (9th Cir. 1996), the petitioner was a noncitizen subject to a final order of removal. *Singh*, 87 F.3d 346 at 347. The petitioner sought to adjust his status to that of a lawful permanent resident, and his counsel requested the petitioner's immigration file in advance of the hearing on that application. *Id.* The government informed counsel that it could not locate the petitioner's file but would notify him if it was found. *Id.* The petitioner's adjustment of status application was denied at the petitioner's hearing. *Id.* Immediately thereafter, the petitioner was detained for removal "as soon as possible." *Id.* The petitioner's counsel, who was present at the hearing, drafted—by hand—a motion to reopen removal proceedings before the immigration judge and a request for stay of deportation. *Id.* The immigration judge granted the stay of deportation at 2:11 p.m., but the petitioner's removal plane had departed minutes before, and the government claimed that he could not be returned after departure. *Id.* Nine months later, the petitioner filed a habeas petition in district court. *Id.* at 348. The district court held that it lacked habeas jurisdiction over the petitioner's claim because the petitioner's removal was lawful, and he was no longer in detention. *Id.* The Ninth Circuit reversed, holding that the petitioner's removal

---

[4] For this same reason, § 1252(g) does not divest the court of its jurisdiction to consider Petitioner's alternative theories for jurisdiction based on 5 U.S.C. § 702 (Administrative Procedure Act), 28 U.S.C. § 2201 (declaratory relief), 28 U.S.C. 1361 (mandamus), and 28 U.S.C. § 1331 (federal question).

was unlawful as a matter of law because the government was obligated to effectuate the immigration judge's order staying the petitioner's removal, despite the petitioner's plane having departed, and because the government interfered with the petitioner's right to counsel by failing to turn over his immigration file before his status adjustment hearing. *Id.* at 349. Thus, the Ninth Circuit found, where the government unlawfully removes a petitioner to a foreign country, rendering him unable to challenge his removal in the manner prescribed by the Immigration and Nationality Act, he remains "an alien held in custody pursuant to an order of deportation." *Id.* at 349–50; *see also Noem v. Abrego Garcia*, 604 U.S. --- (2025) (directing the government to facilitate the return of a noncitizen unlawfully removed to El Salvador due to a previous withholding of removal order).

In their opposition, Respondents argue that this exception does not apply because "there was not a stay of removal from an Immigration Judge or from any court," thus "Petitioner has not shown that she qualifies for the rare exception allowing review of her removal." (Doc. No. 12 at 4.) However, Respondents offer no support for their conclusory assertion that, in order to constitute an "extreme circumstance" warranting continued jurisdiction following removal, Petitioner's removal must be unlawful in the sense that it violates a court ordered stay, as opposed to the removal being unlawful because it violates Petitioner's statutory and/or constitutional rights. Further, while Respondents attempt to distinguish the cases cited in Petitioner's motion to support her claim for continuing jurisdiction, Respondents do not dispute that many of those cited cases granted relief to noncitizens who were not subject to a court ordered stay of removal at the time of their removal. *See e.g., Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) (directing government to "parole or make other arrangements" to return class members who had not been provided adequate notice of their potential removal); *L. v. U.S. Immigr. & Customs Enf't*, No. 18-cv-00428-DMG, 2026 WL 313340 (S.D. Cal. Feb. 5, 2026) (directing return of class members who were removed after being unlawfully coerced into voluntary removal through the government's family separation policy); *B.P. v. Bostock*, No. 23-cv-00890-KKE, 2024 WL 2959550 (W.D. Wash. June 12, 2024) (denying government's motion to dismiss petition seeking return of noncitizens who were removed pursuant to non-final removal order despite being told

they would have 30 days to file a motion to reopen removal proceedings before removal). While the court recognizes that these cases are not factually identical to Petitioner's case, they stand for the same key proposition: a noncitizen unlawfully removed from the United States under extreme circumstances may seek their return despite no longer being detained in the district in which they seek relief.

Indeed, it is difficult to argue that Petitioner's removal constitutes anything less than an "extreme circumstance." On February 18, 2026, Petitioner voluntarily appeared before USCIS with her daughter for a hearing on her application for adjustment of status. (Doc. No. 1 at ¶ 25.) At the time of the hearing, Petitioner's DACA status was undisputedly active. (Doc. No. 2-1 at 5.) Thus, Petitioner "did not believe [she] could be at risk of detention or deportation." (*Id.* at 12.) Petitioner's belief was well-founded, as DACA protects noncitizens from detention or removal, regardless of their immigration history. *See Dept. of State v. Muñoz*, 602 U.S. 899, 924 (Sotomayor, J., dissenting) ("Even though DACA status entitles [recipients] to work and live in the country without the immediate threat of removal, *see* 8 C.F.R. § 236.21(c), it does not change their initial entry designation."); *Alvarado v. Noem*, No. 1:25-cv-01959-DJC-CSK, 2026 WL 99885, at *1 (E.D. Cal. Jan. 14, 2026) ("Petitioner is not subject to removal because he was granted deferred removal by the government . . . As Petitioner is not subject to removal, there is definitionally no likelihood of removal in the foreseeable future and Respondents have no legal justification for detaining him.") Indeed, the government affirmed Petitioner's belief in writing when it approved her DACA status. (Doc. No. 1-2 at 5) ("Deferred action is an exercise of prosecutorial discretion by USCIS not to pursue the removal of an individual from the United States for a specific period.") Despite this, and despite Petitioner "inform[ing] the [arresting] officers multiple times that [her] DACA was still valid," Petitioner was detained at the hearing on February 18, 2026. (*Id.* at 12.) At approximately 8:00 a.m. the following day—less than 24 hours after Petitioner's good faith appearance to pursue lawful permanent resident status in this country—she was removed to a nation where she had not lived in over 27 years, pursuant to an order purportedly entered against her when she was fifteen years old. (*Id.*)

Under Respondents' interpretation of the Ninth Circuit habeas jurisdiction exception,

9

Petitioner does not present an "extreme circumstance" warranting continued jurisdiction of her claim because—within the approximately twenty hours between her detention and her removal—Petitioner did not succeed in contacting and retaining counsel who could then prepare and file an emergency request for stay of her removal, and an immigration judge did not grant such an emergency stay request. Essentially, Respondents argue that the government is immune from liability from any claim for violation of a noncitizen's right to due process in removal proceedings so long as that right is violated quickly. Respondents, unsurprisingly, do not cite any authority supporting this proposition. Thus, the court finds that Petitioner has demonstrated a likelihood of success on the merits of her claim that her removal presents an extreme circumstance warranting continued habeas jurisdiction despite her removal to Mexico.

       2.     <u>Due Process</u>

Petitioner contends that she maintains a due process property interest in her DACA status and that Respondents deprived her of that right when they removed her from the United States without process. (Doc. No. 2 at 10–12.)

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (citation omitted); *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

To maintain a property interest in a government benefit, such as DACA status, "a person clearly must have more than an abstract need or desire for [the benefit]." *Gerhart v. Lake County, Mont.*, 637 F.3d 1013, 1019 (9th Cir. 2011) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). The person "must have more than a unilateral expectation of it," and must "instead have a legitimate claim of *entitlement* to it." *Id.* This property interest must "stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

Numerous courts within the Ninth Circuit have found that noncitizens maintain a due process property interest in their active DACA status. For example, in *Medina v. U.S. Department of Homeland Security*, 313 F. Supp. 3d 1237 (W.D. Wash. 2018), the plaintiff challenged DHS's purported termination of his active DACA status due to his alleged gang affiliations. *Medina*, 313 F. Supp. 3d at 1242. The plaintiff argued that DHS's unilateral termination of his DACA status, without notice or opportunity to be heard, violated his right to due process. *Id.* at 1250. The court noted that once a DACA applicant satisfies enumerated "objective and non-discretionary criteria," he "enjoys significant liberty and property interests, including the right to obtain lawful employment authorization and the right to be considered lawfully present in the United States." *Id.* at 1251 (quoting *Torres v. U.S. Dep't of Homeland Sec.*, No. 17-cv-01840-JM, 2018 WL 1757668 (S.D. Cal. Apr. 12, 2018)). Thus, the court found that the government's termination of the plaintiff's DACA status pursuant to its unilateral "determination that Plaintiff is in a gang or gang-affiliated, without supporting evidence," violated the plaintiff's due process "right to an opportunity to be heard in a 'meaningful manner.'" *Id.*; *see also Inland Empire – Immigrant Youth Collective v. Nielsen*, No. 17-cv-02048-PSG, 2018 WL 4998230, at *20 (C.D. Cal. Apr. 19, 2018) ("[B]ecause Plaintiffs have sufficiently demonstrated that the grant of DACA constitutes a conferred benefit that requires procedural safeguards before it can be terminated, the Court concludes that the due process claim should not be dismissed on this basis."); *Torres*, 2018 WL 1757668, at *9 ("In light of the liberty and property interests at stake, the court concludes that Plaintiff, under the Due Process Clause of the Fifth Amendment, is entitled to notice of a DACA termination hearing and an opportunity to meaningfully respond to the notice of DACA termination before DACA status is revoked.").

Here, Respondents concede that Petitioner had active DACA status at the time of her removal and concede that her status has been neither revoked nor terminated. (Doc. No. 12 at 2) ("[Petitioner's] deferred action is set to expire on April 23, 2026, but has not been revoked.") Further, the approval notice provided to Petitioner confirms that "[u]nless terminated, this decision to defer removal action will remain in effect for the duration of the validity period noted above." (Doc. No. 2-1 at 5.) The approval notice identifies the expiration date of her validity

11

period as April 23, 2026, two months after her detention and removal. (*Id.*)

This court finds the court's reasoning in *Medina* persuasive. Petitioner was conferred substantial benefit pursuant to her DACA status, including the right to live and work in the United States without fear of removal. The government deprived Petitioner of that benefit by removing her from the United States without any notice or opportunity to be heard as to why her DACA status should not be terminated. Thus, Petitioner is likely to succeed on the merits of her claim that her removal from the United States violated her due process interest in her DACA status.[5]

**B.      Irreparable Harm**

It is well established that the deprivation of a constitutional right "unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (*quoting* Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)); *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) ("It is well-established that the first factor is especially important when a plaintiff alleges a constitutional violation and injury. If a plaintiff in such a case shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation.").

Respondents, nonetheless, contend that Petitioner cannot show any irreparable harm because she "was already detained and removed" such that "[a]t this point, she is still out of custody and Respondents are not looking to take any further action involving her so there is no irreparable harm that will occur in the absence of a restraining order." (Doc. No. 12 at 7.)

In her declaration, Petitioner describes how her detention and removal has caused "severe emotional trauma and financial hardship not only for [her], but also for [her] daughter." (Doc. No. 2-1 at 12.) Petitioner attests that "[f]or nearly 30 years the United States has been [her] home, the

---

[5] Petitioner also argues that Petitioner's removal without statutory authority violated her right to due process. (Doc. No. 12 at 12–14.) Because the court will grant Petitioner the relief she seeks pursuant to her DACA due process claim, the court will not address that argument in this order.

place where [she] worked hard and where [she] raised [her] daughter," but in "a matter of hours, [her] entire life was taken away." (*Id.*) She states that, "in less than twelve hours, [she] found [her]self in a country that feels unfamiliar and overwhelming," leaving her "lost and disoriented, as if [she has] been forced to start [her] life from the beginning in a place where [she] no longer know[s] how to navigate daily life." (*Id.*) Petitioner further notes that her removal has caused financial strain on her family as her "daughter has been left alone facing financial obligations without the support that [Petitioner has] always provided for her." (*Id.* at 13.) Finally, Petitioner attests that her "wrongful deportation has deeply broken [her] family." (*Id.*) She states that "[t]hroughout [her] life, [she has] always told [her] daughter that as long as [they] have each other, material things do not matter," but "even that has been taken from [them]—the simple human right for a mother and daughter to be together." (*Id.*)

Petitioner's daughter also submitted a declaration in support of her mother's motion for a temporary restraining order. (Doc. No. 2-1 at 26–27.) Therein, she describes witnessing her mother "looking to [her] for reassurance and answers," while she was detained, "but [she] had none." (*Id.* at 26.) She states that her mother's removal "has left [her] feeling completely alone and afraid," and that it "feels like [she is] grieving someone who is still alive." (*Id.*) She states that the "sudden loss of [her] mother's presence in [their] home has affected every part of [her] life, and each day without [Petitioner] is a painful reminder of how much [their] lives changed the moment she was taken away." (*Id.*)

Separation from family members and potential economic hardship have both been held to constitute irreparable harm. *Andreiu v. Ashcroft*, 253 F.3d 477, 484 (9th Cir. 2001) (en banc). The court finds, clearly and unequivocally, that each day Petitioner remains unlawfully separated from her daughter, they both suffer unimaginable irreparable harm. The second *Winter* factor weighs entirely in favor of granting Petitioner injunctive relief.

**C.      The Balance of Equities and Public Interest**

The court now turns to the last two *Winter* factors. The balance of the equities and public interest analyses merge when the government is the opposing party, as is the case here. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556

13

U.S. 418, 435 (2009)).

Respondents argue that the balance of interests tip in the government's favor because Petitioner "received the procedures outlined in the Immigration and Nationality Act and regulations" such that Petitioner's "removal order has been properly executed" and "she is not entitled to return to the United States." (Doc. No. 12 at 7.)

As Petitioner notes, the government "cannot suffer harm from an injunction that merely ends an unlawful practice." (Doc. No. 2 at 16) (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)). Further, despite any interest the government may have in promptly executing removal orders, "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952)).

Therefore, the third *Winter* factor also weighs in favor of granting Petitioner's request for injunctive relief. Because all three *Winter* factors weigh in Petitioner's favor, the court finds that Petitioner is entitled to injunctive relief returning her to the United States.

**D.     Bond**

Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief 'only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Fed. R. Civ. P. 65(c)). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" *Id*. (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Johnson*, 572 F.3d at 1086 (quoting *Jorgensen*, 320 F.3d at 919). Petitioner requests that the court not require her to post bond because "it is unlikely that any harm will come to Respondents as a result of a grant of temporary relief and Respondents will incur negligible or zero financial costs. (Doc. No. 2 at 17.)

The court finds that no security is required here. Courts regularly waive security in cases

14

like this one. *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Lepe v. Andrews*, No. 25-cv-01163-KES-SKO, 2025 WL 2716910, at *10 (E.D. Cal. Sep. 23, 2025); *Pinchi v. Noem*, No. 25-cv-05632- RMI-RFL, 2025 WL 1853763, at *4 (N.D. Cal. Jul. 4, 2025).

## CONCLUSION

For the reasons explained above,

1.     Petitioner Maria de Jesus Estrada Juarez's motion for a temporary restraining order (Doc. No. 2) is GRANTED as follows:

    a.     Within seven (7) days of issuance of this order, Respondents shall facilitate Petitioner's return to the United States;

    b.     Upon her return, Petitioner shall be returned to the status quo, including that she shall be entitled to all the rights and benefits afforded to her by her DACA status as if her February 19, 2026 removal never occurred;

2.     Within ten (10) days of issuance of this order, the parties shall file a joint status report regarding Petitioner's return to the United States; and

3.     This matter is REFERRED to the assigned magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated:    **March 23, 2026**

_____
Dena Coggins
United States District Judge

15